IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MANASEK AUTO PARTS, INC., d/b/a UNDERCAR WAREHOUSE, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CHAMPION LABORATORIES, INC.; PUROLATOR FILTERS N.A. L.L.C.; HONEYWELL INTERNATIONAL, INC.; WIX FILTRATION PRODUCTS; CUMMINS FILTRATION INC.; THE DONALDSON COMPANY; BALDWIN FILTERS INC.; BOSCH U.S.A.; MANN + HUMMEL U.S.A., INC. and ARVINMERITOR, INC.<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: Case No. 08-305-DRH<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**CLASS ACTION COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

Plaintiff, Manasek Auto Parts, Inc. d/b/a Undercar Warehouse ("Manasek"), on behalf of itself and all others similarly situated, for its Class Action Complaint ("Complaint") against Defendants Champion Laboratories, Inc.; Purolator Filters N.A. L.L.C.; Honeywell International, Inc.; Wix Filtration Products; Cummins Filtration, Inc.; The Donaldson Company; Baldwin Filters, Inc.; Bosch U.S.A.; Mann + Hummel U.S.A., Inc.; and ArvinMeritor, Inc. (collectively, "Defendants") alleges as follows upon information and belief:

### I. FACTUAL SUMMARY

1. This case involves a conspiracy by Defendants or their predecessors, controlled subsidiaries, or affiliates to raise, fix, maintain and/or stabilize prices anti-competitive levels in the United States markets for replacement oil, air, fuel and transmission filters ("Filters").

1

2. Filters are utilized to remove contaminants from combustion engines and related systems. Oil filters remove contaminants from the motor oil used to lubricate an engine's pistons; fuel filters primarily screen dirt and rust particles from an engine's fuel lines; air filters prevent particulate matter from entering an engine's cylinders; and transmission filters ensure the proper functioning of an engine's hydraulic and transmission systems.

3. Filters become less effective over time as contaminants are filtered out of the respective engine systems, and they are designed to be replaced periodically. As previously noted, this case involves a conspiracy which affected the markets for replacement Filters. Replacement Filters that are purchased to replace original equipment filters included in new combustion engines.

4. Filters are primarily purchased from vendors of automotive parts, such as Plaintiff and other members of the Class.

5. This case arises in part from a sworn affidavit executed on March 25, 2008, by a former employee of two of the Defendants named herein, in separate litigation pending in the Southern District of Illinois against Defendant Champion, *Champion Laboratories, Inc. v. Burch*, 06-CV-4031 (JPG) (S.D. Ill.). As described below, this affidavit and additional specific allegations detail Defendants' price-fixing conspiracy.

6. Many of the allegations contained herein, particularly those with respect to the specifics of meetings between the Defendants, are based on alleged recorded conversations and the personal knowledge of this former employee, who served as a National Accounts and Division Sales Manager for Defendant Champion.

7. Upon information and belief, this former employee, who was employed at Defendant Purolator in 1999 and Defendant Champion until 2006, will testify that Defendants

2

conspired and agreed to coordinate prices, rig bids, and allocate customers from at least January 1, 1999, to the present (the "Class Period").

8. As a Division Sales Manager responsible for monitoring and coordinating terms of sales, the former employee was privy to, among other things, exchanges of confidential pricing materials by which Defendants unlawfully agreed to the timing and magnitude of price increases throughout the Class Period.

9. Because of Defendants' wrongful conduct, Plaintiff and the other members of the Class defined below paid artificially inflated prices for Filters, thereby suffering antitrust injury to their business and property. Defendants' actions constitute *per se* violations of Section 1 of the Sherman Act.

10. This action seeks to recover damages and injunctive relief on behalf of Plaintiff and a nationwide class of direct purchasers of Filters pursuant to Section 1 of the Sherman Act and Section 4 of the Clayton Act.

## II. JURISDICTION AND VENUE

11. This Complaint is filed under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages, equitable relief, expenses and costs of suit for injuries sustained by Plaintiff and the Class resulting from violations of Defendants of Section 1 of the Sherman Act, 15 U.S.C. § 1. Subject matter jurisdiction is proper pursuant to Section 4(a) of the Clayton Act, 15 U.S.C. § 15(a), and 28 U.S.C. § 1331 and 1337, because the action arises under the laws of the United States.

12. Defendants are found or transact business within this district and Defendants' interstate trade and commerce is carried out, in substantial part, in this district. Venue therefore lies within this district under 15 U.S.C. § 22 and 28 U.S.C. § 1391(b) and (c).

3

13. This Court has personal jurisdiction over each Defendant because, *inter alia*, each Defendant: (a) transacted business throughout the United States, including in this District; (b) manufactured, sold, shipped and delivered substantial quantities of Filters throughout the United States, including in this District; (c) had substantial contacts with the United States, including in this District; and (d) was engaged in an illegal scheme and price-fixing conspiracy that was directed at and had the intended effect of causing injury to persons residing in, located in, or doing business throughout the United States, including in this District.

### III.   THE PARTIES

14. Plaintiff Manasek Auto Parts, Inc., d/b/a Undercar Warehouse is a corporation organized under the laws of the State of Pennsylvania and is located at 1614 Main Street, Dickson City, Pennsylvania 18477. During the Class Period, Plaintiff directly purchased Filters from one or more Defendants and paid artificially inflated prices for these Filters as a result of Defendants' antitrust violations.

15. Defendant Purolator Filters N.A. L.L.C. is headquartered in Fayetteville, North Carolina, with a principal mailing address of 2800 South 25th Ave., Broadview, Illinois 60565 listed with the North Carolina Secretary of State. Purolator Filters N.A. is a joint venture between Bosch U.S.A. and Mann + Hummel U.S.A., Inc.

16. Bosch U.S.A. is headquartered in Broadview, Illinois, with its business address at 2800 S. 25th Ave., Broadview, Illinois 60155.

17. Mann + Hummel U.S.A., Inc., is headquartered in Portage, Michigan, with its business address at 6400 S. Sprinkle Road, Portage, Michigan 49002.

18. Defendant ArvinMeritor, Inc. is headquartered in Troy, Michigan, with its address at 2135 West Maple Road, Troy, Michigan 48084. ArvinMeritor, Inc. owned Purolator Filters N.A. L.L.C. from January 1999 through March 2006, at which point it sold Purolator Filters

4

N.A. L.L.C. to Bosch U.S.A. and Mann + Hummel U.S.A., Inc. Purolator Filters N.A. L.L.C., Bosch U.S.A., Mann + Hummel U.S.A., Inc. and ArvinMeritor, Inc. are hereinafter collectively referred to as "Purolator."

19. Defendant Champion Laboratories, Inc. is headquartered at Albion, Illinois, with a business address at 200 S. Fourth St., Albion, Illinois 62806.

20. Defendant Wix Filtration Corp. LLC ("Wix") is headquartered in Gastonia, North Carolina with a principal mailing address of 1101 Technology Drive, Ann Arbor, Michigan 48108 listed with the North Carolina Secretary of State.

21. Defendant Honeywell International, Inc., ("Honeywell") is headquartered at Morristown, New Jersey, with a business address of 101 Columbia Road, Morristown, New Jersey 07962.

22. Defendant Cummins Filtration, Inc., ("Cummins") is headquartered in Nashville, Tennessee, with a business address of 2931 Elm Hill Pike, Nashville, Tennessee 37214.

23. Defendant The Donaldson Company ("Donaldson") is a corporation headquartered in Minneapolis, Minnesota, with a business address of 1400 W. 94th St., Minneapolis, Minnesota 55431.

24. Defendant Baldwin Filters, Inc. ("Baldwin") is headquartered in Kearney, Nebraska, with a business address of 4400 E. Hwy. 30, Kearney, Nebraska 68848.

25. Purolator, Champion, Wix, Honeywell, Cummins, Donaldson and Baldwin are collectively referred to hereinafter as "Defendants."

### IV. CLASS ACTION ALLEGATIONS

26. Plaintiff brings this action as a class action pursuant to Rules 23(a), 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure, as the representative of a Class defined as follows:

> All persons or entities who purchased Filters for delivery in the United States directly from the Defendants or any of their parents, affiliates, subsidiaries, predecessors or successors in interest, at any time during the period from January 1, 1999, through and after the date hereof until the effects of Defendants' illegal conduct ceases (the "Class").

Excluded from the Class are Defendants and their officers, directors, management, employees, subsidiaries or affiliates and all entities owned by the federal government.

27. Plaintiff does not know the exact number of Class members because such information is in the exclusive control of Defendants or their co-conspirators. Due to the nature of the trade and commerce involved, however, Plaintiff believes that Class members number at least in the hundreds if not thousands and thus are sufficiently numerous and geographically dispersed throughout the United States so that joinder of all members is impracticable.

28. Plaintiff is a member of the Class, and Plaintiff's claims are typical of the claims of members of the Class as Plaintiff and all members of the Class are similarly affected by Defendants' wrongful conduct in violation of the antitrust laws. All members of the Class have paid artificially inflated prices for Filters. Additionally, all members of the Class were harmed because Defendants' anticompetitive practices deprived the Class members of competitive markets for Filters.

29. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in the prosecution of class actions and antitrust litigation.

30. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Such common questions of law and fact include:

> a. whether Defendants and their co-conspirators engaged in a conspiracy to fix, raise, maintain or stabilize the price of Filters;

6

    b.    whether Defendants' conspiracy and combinations as alleged in this Complaint are *per se* violations of Section 1 of the Sherman Act, 15 U.S.C. § 1;

    c.    whether Defendants' wrongful conduct caused antitrust injury to Plaintiff and the other members of the Class;

    d.    whether the unlawful conduct of Defendants caused Plaintiff and the other Class members to pay more for Filters than they otherwise would have paid absent Defendants' conduct;

    e.    the appropriate Class-wide measure of damages; and

    f.    the appropriate scope of injunctive relief.

31.    Defendants have acted on grounds generally applicable to the Class in that Defendants' anticompetitive actions inhibited competition in the markets in which all Class members purchased Filters. Accordingly, injunctive relief is necessary to protect all Class members from further antitrust injury.

32.    Plaintiff knows of no difficulty that would prevent this case from being maintained as a class action and class action treatment is a superior method for the fair and efficient adjudication of this controversy. Class action treatment will, among other things, allow a large number of similarly situated persons and/or entities to prosecute their common claims in a single forum, thus avoiding the unnecessary duplication of resources that numerous individual actions would require. Moreover, class action treatment allows injured persons the ability to seek redress on claims that might be impracticable to pursue individually.

## V.    FACTUAL ALLEGATIONS

### A.    Overview of the Filters Markets

33.    Oil, air, fuel and transmission filters are primarily sold into two separate channels: (i) to Original Equipment Manufacturers ("OEM") and (ii) to aftermarket sellers of replacement Filters ("Aftermarket Sellers").

34. OEMs purchase filters for use in connection with new vehicles. These filters are installed in vehicles during the production process.

35. Aftermarket Sellers purchase Filters directly from Defendants for wholesale or retail sale to the public, either (i) in connection with professional services rendered to an indirect purchaser (for example, an oil filter sold to a customer as part of an oil change) or (ii) for individuals to replace their own Filters.

36. Defendants are the primary manufacturers of Filters purchased by Aftermarket Sellers, and this litigation involves a conspiracy to fix the prices for replacement Filters bought by these direct purchasers.

37. The United States Filters markets are highly concentrated, with just a handful of major producers manufacturing and producing these products. This concentration, as well as interlocking business arrangements, assisted Defendants in successfully implementing their conspiracy. For example, in April 2006, Defendant ArvinMeritor sold Defendant Purolator to Defendants Bosch and Mann + Hummel. Defendants Bosch and Mann + Hummel now operate Defendant Purolator as a joint venture. Mann + Hummel CEO Dieter Seipler has stated that "it was a natural alliance because Bosch is a major private-brand customer for Mann + Hummel in Europe and in other regions of the world."

38. Annual revenues for Filters markets in the United States are approximately $3 to $5 billion.

**B.    Defendants' Unlawful Conduct**

39. Beginning at least as early as January 1, 1999, and continuing thereafter, Defendants and their co-conspirators participated in a continuing agreement, combination and conspiracy to artificially fix, raise, maintain or stabilize prices for Filters in the United States. Defendants acted in furtherance of their scheme by, among other things, (i) having their officers

8

and/or representatives meet at industry trade shows and other locations to set prices and (ii) exchanging confidential information regarding pricing.

40. As a result of their unlawful actions, Defendants were able to force coordinated price increases on the Filters markets.

41. Defendants' unlawful conduct took many forms, including but not limited to:

    a. attending meetings and / or otherwise exchanging information regarding the pricing and sale of Filters;

    b. selling Filters to customers at collusive and non-competitive prices;

    c. agreeing to sell Filters at specified, pre-arranged prices;

    d. agreeing not to compete for each other's customers;

    e. accepting payment at non-competitive prices;

    f. giving actual and/or apparent authority to employees' participation in furtherance of the wrongful conduct; and

    g. fraudulently concealing the wrongful conduct.

42. Specific allegations of Defendants' unlawful conduct include, but are not limited to:

    a. At a trade convention called the Heritage Show in May 1999, representatives of Defendants agreed in person, on behalf of their respective employers, to raise prices for Filters, and Defendants later raised prices in accordance with the wrongful agreements reached at the Heritage Show;

    b. Thereafter, on June 28, 1999, a Purolator executive faxed an executive at Honeywell a letter which announced a 6% increase on all Purolator branded filters effective August 15, 1999, but did not send a price increase notification to Purolator's customers until July 1999;

    c. In February 2004, Champion's President informed his sales team that Champion was about to raise prices and told them to make sure Champion's "competitors" were aware of the increase and adjusted their prices accordingly, both in timing and amount, pursuant to wrongful agreements previously reached, which the employees accomplished by meeting with Defendants' representatives;

      d.      In 2004, an internal Champion e-mail with the subject line "Price Increases" confirmed that the other Defendants were in agreement regarding a coordinated price increase; and

      e.      Pursuant to the unlawful agreement, Defendants each instituted similar price increases, in amounts of approximately 4-6%, at the same times.

43.    Upon information and belief, Defendants engaged in repeated in-person meetings to further their anticompetitive scheme. Many of these meetings occurred at the annual Filter Manufacturers Council meeting in Nashville, Tennessee. The Filter Manufacturers Council is a trade organization comprised of the Defendants and other industry participants.

44.    On January 19, 2006, William G. Burch, former employee of both Purolator N.A. L.L.C. and Champion Laboratories, Inc. ("Champion"), filed a complaint against Champion in state court in Tulsa, Oklahoma, alleging, among other things, that Mr. Burch was wrongfully terminated from his employment with Champion for knowing about, and subsequently reporting to authorities, the antitrust violations alleged in the Pending Actions. Mr. Burch's Complaint was removed to federal court and then transferred to Illinois for consolidation with a subsequently filed action, *Champion Labs., Inc. v. Burch*, 06-CV-4031 (JPG) (S.D. Ill.), which is currently set for trial in September 2008.

45.    On March 25, 2008, Burch, a former National Accounts and Division Sales Manager for Defendant Champion, executed an affidavit under oath in connection with the *Champion Labs* case. This affidavit, which is made on the basis of personal knowledge, states as follows:

      a.      Burch "became aware that Champion was involved in activities with Champion's competitors that constitute price-fixing. For example, Champion provided information concerning price increases to competitors before it provided that information to consumers or to the general public. Champion was also given advance information about price increases by its competitors. Further information is set forth accurately and in detail in the mediation statement dated September 21, 2007, that I understand will be filed under seal in this case."

10

      b.      Burch also stated that "[d]uring the time I worked for Champion, I was directed by Champion to conduct discussions regarding 'pricing' with employees of competitors of Champion. I refused to conduct those discussions."

46. Defendants' wrongful conduct in manipulating prices was undertaken in order to charge artificially inflated prices for their Filters.

47. Defendants' wrongful conduct deprived Plaintiff and members of the Class the ability to transfer their business in response to price increases.

48. Had Defendants not engaged in the illegal conduct alleged herein, Plaintiff and other members of the Class would have been able to purchase Filters that were competitively priced.

## VI.    TRADE AND COMMERCE

49. At all material times, Defendants provided Filters to their customers across state lines.

50. During the relevant time period, in connection with purchase and sale of Filters, monies as well as contracts, bills and other forms of business communication and transactions were transmitted in continuous and uninterrupted flow across state lines.

51. During the relevant time period, various devices were used to effectuate the illegal acts alleged herein, including the United States mail, interstate travel, and interstate commerce. The activities of Defendants as charged in this Complaint were within the flow of, and have substantially affected, interstate commerce.

## VII.    EFFECTS ON COMPETITION

52. Defendants' unlawful conduct has stifled competition in Filters markets and has had a direct, substantial, and adverse effect on competition by artificially increasing prices and stifling innovation.

## VIII.   CO-CONSPIRATORS

53.   Whenever in this Complaint reference is made to any act, deed, or transaction of any corporation, the allegation means that the corporation engaged hi the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control, or transaction of the corporation's business or affairs.

54.   The acts alleged in this Complaint to have been done by Defendants were authorized, ordered and condoned by their parent corporations and authorized, ordered and performed by their officers, directors, agents, employees, or representatives while engaged in the management, direction, control or transaction of their business affairs.

55.   Various other persons, firms, and corporations not named as Defendants have participated as co-conspirators in the violations alleged herein and have aided, abetted and performed acts and made statements in furtherance thereof.

## IX.   DAMAGES

56.   As a consequence of Defendants' antitrust violations, Plaintiff and the Class have sustained substantial losses and damage to their business and property in the form of overcharges for Filters. Plaintiff and the Class are threatened with further injury unless Defendants are enjoined from continuing the unlawful conduct alleged herein and from entering into any other combinations, conspiracies or agreements having similar purposes and effects. All Class members were affected in the same manner by Defendants' anticompetitive conduct.

## X.   FRAUDULENT CONCEALMENT, EQUITABLE TOLLING AND CONTINUING VIOLATIONS

57.   Plaintiff and other members of the Class had no knowledge of Defendants' unlawful scheme and could not have discovered Defendants' unlawful conduct at an earlier date by the exercise of due diligence. Defendants affirmatively concealed their illegal acts and these acts only recently became known to the public through filings in the aforementioned litigation in the Southern District of Illinois. As a result of Plaintiff's lack of knowledge of the effects of Defendants' unlawful scheme, Plaintiff asserts the tolling of any applicable statutes of limitations affecting the right of action by Plaintiff and other members of the Class.

58.   Moreover, Defendants' actions constitute a continuing violation in that Defendants' anticompetitive practices resulted in unlawfully priced Filters, and each and every such transaction at artificially inflated prices is an overt act that injured Plaintiff and other members of the Class. These artificially inflated prices continue to exist in the Relevant Markets as Defendants' have yet to cease their unlawful conduct. Upon each and every instance that Defendants failed to disclose their illegal conduct and their effect on the prices paid by Plaintiff and the Class, Defendants knew or should have known that the undisclosed information was material to those who purchased such products.

59.   In addition to this successive overcharging, Defendants committed numerous additional overt acts in furtherance of their conspiracy, both within and prior to four years from the date of the filing of this Complaint. Such overt acts include the illegal meetings and communications regarding Filter prices described herein.

60.   Therefore, each instance in which Defendants engaged in the conduct complained of herein and each instance in which a Class member unknowingly remitted paid supra-

competitive prices for Filters constitutes part of a continuing violation and operates to toll any applicable statutes of limitation. Furthermore, Defendants are estopped from relying on any statute of limitations defense because of their unfair and deceptive conduct.

## XI. VIOLATIONS ALLEGED

### COUNT 1

### Horizontal Price Fixing (1.5 U.S.C. 1)

61. Plaintiff incorporates by reference the above allegations, as though fully set forth herein.

62. As alleged above, from at least January 1, 1999, to the present, Defendants combined and conspired to fix, raise, maintain, and stabilize prices in the United States Filters markets at artificially inflated levels, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. These agreements among horizontal competitors of Filters affected interstate commerce and are *per se* illegal.

63. Plaintiff and the Class have been injured in their business and property by reason of Defendants' antitrust violations. This injury consists of paying more for Filters than Plaintiff and the Class would have paid but for Defendants' illegal conduct. Plaintiff's injury is the type the antitrust laws were designed to prevent and flows from that which makes Defendants' conduct unlawful.

## XII. DEMAND FOR JURY TRIAL

64. Plaintiff demands trial by jury on all issues so triable.

## XIII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of itself and the Class, respectfully prays:

a. that the Court determine that this action may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action be given to the Class;

b. that the acts alleged herein be adjudged and decreed to be *per se* unlawful restraints of trade in violation of Section 1 of the Sherman Act;

c. that the Class recover three-fold the damages determined to have been sustained by them, and that joint and several judgments be entered against Defendants in favor of the Class;

d. that the Class recover the costs and expenses of suit, pre- and post-judgment interest, and reasonable attorney fees as provided by law;

e. that Defendants be enjoined from entering into the unlawful agreements discussed above; and

f. the Class be granted such other, further relief as may be determined to be just, equitable and proper by this Court.

Dated: April 23, 2008

Respectfully submitted,

CAREY & DANIS, LLC

James J. Rosemergy
Michael J. Flannery
8235 Forsyth, Suite 1100
St. Louis, MO 63105
Telephone: (314) 725-7700
Fax: (314) 721-0905

15

Simon B. Paris, Esquire
Patrick Howard, Esquire
**SALTZ MONGELUZZI BARRETT & BENDESKY, P.C.**
One Liberty Place, 52nd Floor
1650 Market St.
Philadelphia, PA 19103
Telephone: (215) 496-8282
Fax: (215) 496-0999

Donald L. Perelman, Esquire
Roberta D. Liebenberg, Esquire
**FINE, KAPLAN AND BLACK, R.P.C.**
1835 Market Street
28th Floor
Philadelphia, PA 19103
Telephone: (215) 567-6565
Fax: (215) 568-5872

Michael J. Boni, Esquire
**BONI & ZACK LLC**
15 St. Asaphs Road
Bala Cynwyd, PA 19004
Telephone: (610) 822-0201
Fax: (610) 822-0206

Joseph Goldberg, Esquire
**FREEDMAN BOYD HOLLANDER GOLDBERG & IVES, P.A.**
20 First Plaza, Suite 700
Albuquerque, New Mexico 87102
Telephone: (505) 842-9960
Fax: (505) 842-0761

*Attorneys for Plaintiff, individually and on behalf of all others similarly situated.*

%JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Manasek Auto Parts, Inc. d/b/a/ Undercar Warehouse

## DEFENDANTS
CHAMPION LABORATORIES, INC.; PUROLATOR FILTERS N.A. L.L.C.; HONEYWELL INTERNATIONAL, INC.; WIX

(b) County of Residence of First Listed Plaintiff   Lackawanna, PA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Edwards, Illinois
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Carey & Danis, LLC, 8235 Forsyth, Ste. 1100, Clayton, MO 63105 314-725-7700

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY / PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☒ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument |  / ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / PERSONAL PROPERTY | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other |  | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | LABOR | SOCIAL SECURITY | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise |  | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| REAL PROPERTY | CIVIL RIGHTS / PRISONER PETITIONS | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | FEDERAL TAX SUITS | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / Habeas Corpus: |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land |  / ☐ 530 General |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty | IMMIGRATION |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application |  |  |
|  |  / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee |  | ☐ 950 Constitutionality of State Statutes |
|  | ☐ 446 Amer. w/Disabilities - Other / ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions |  |  |
|  | ☐ 440 Other Civil Rights |  |  |  |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. 15, 15 U.S.C. 26

Brief description of cause:
price-fixing action regarding for automobile filters

## VII. REQUESTED IN COMPLAINT:
☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE   04/23/2008

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____